IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT FRANKS, JR.,<br><br>Plaintiff,<br><br>v.<br><br>TECH DATA CORPORATION, ROBERT M. DUTKOWSKY, CHARLES E. ADAIR, KAREN DAHUT, HARRY J. HARCZAK, JR., BRIDGETTE HELLER, RICHARD T. HUME, KATHLEEN MISUNAS, THOMAS MORGAN, PATRICK SAYER, and SAVIO W. TUNG,<br><br>Defendants. | CASE NO.:<br><br>COMPLAINT FOR VIOLATION OF FEDERAL SECURITIES LAWS |

Plaintiff Robert Franks, Jr. ("Plaintiff"), by his undersigned attorneys, alleges the following on information and belief, except as to the allegations specifically pertaining to Plaintiff, which are based on personal knowledge.

**NATURE AND SUMMARY OF THE ACTION**

1. Plaintiff, a stockholder of Tech Data Corporation ("Tech Data" or the "Company") brings this action against the members of Tech Data's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) & 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, and 17 C.F.R. § 240.14a-9, arising out of their attempt to sell the Company to affiliates of Apollo Global Management, Inc. ("Apollo").

2. On November 13, 2019, the Company announced that it had entered into a definitive agreement and plan of merger ("Merger Agreement"), by which the Company will be acquired by Tiger Midco, LLC ("Parent") and Tiger Merger Sub Co. ("Merger Sub"), affiliates of

Apollo (the "Proposed Transaction"). Under the terms of the Merger Agreement, Tech Data stockholders will receive $145.00 in cash in exchange for each share of Tech Data common stock (the "Merger Consideration").

3. On December 12, 2019, the Company filed a Preliminary Proxy Statement on Form PREM14A (the "Proxy") with the United States Securities & Exchange Commission. The Proxy is materially deficient and misleading because, *inter alia*, it fails to disclose material information regarding the Company's financial projections, the financial analysis performed by the Company's financial advisor, Bank of America Securities ("BofA"), BofA's financial interest in Apollo and its affiliates, and the employment negotiations between Apollo and Tech Data's management team.

4. Without additional information the Proxy is materially misleading in violation of federal securities laws.

5. By unanimously approving the Proposed Transaction and authorizing the issuance of the Proxy, the Individual Defendants participated in the solicitation even though they knew, or should have known, that the Proxy was materially false and/or misleading. The Proxy is an essential link in accomplishing, and receiving stockholder approval for, the Proposed Transaction.

6. The stockholder vote on the Proposed Transaction is forthcoming (the "Stockholder Vote"). Under the Merger Agreement, following a successful Stockholder Vote, the Proposed Transaction will be consummated.

7. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants (collectively identified below) from conducting the Stockholder Vote on the Proposed Transaction unless and until the material information discussed below is disclosed to the holders of Tech Data common stock, or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

8. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction) and Section 27 of the Exchange Act (15 U.S.C. § 78aa) because Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

9. Personal jurisdiction exists over each Defendant either because each has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

10. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) the conduct at issue had an effect in this District, as the Company's common stock is listed and traded on the Nasdaq Stock Exchange within this District; and (ii) Defendants have received substantial compensation in this District by accessing the capital markets active in this District.

**PARTIES AND RELEVANT NON-PARTIES**

11. Plaintiff is, and has been at all relevant times, the owner of Tech Data common stock.

12. Defendant Tech Data is a corporation organized and existing under the laws of Florida. It maintains principal executive offices at 5350 Tech Data Drive, Clearwater, Florida 33760. Tech Data is one of the world's largest technology distributors, assisting companies like HP, Apple, Cisco, and Microsoft in bringing their products to market. Tech Data common stock is listed for trading on the Nasdaq under the ticker symbol "TECD."

13. Defendant Charles Adair has served as a director of the Company since 1995.

14. Defendant Karen Dahut has served as a director of the Company since June 2017.

15. Defendant Robert M. Dutkowsky as a director of the Company since June 2017, as Chairman of the Board since June 2017, and as Executive Chairman since June 2018.

16. Defendant Harry J. Harczak, Jr. has served as a director of the Company since 2008.

17. Defendant Bridgette Heller has served as a director of the Company since 2016.

18. Defendant Richard T. Hume has served as the Company's Chief Executive Officer since June 2018.

19. Defendant Kathleen Misunas has served as a director of the Company since 2000.

20. Defendant Thomas Morgan has served as a director of the Company since 2007.

21. Defendant Patrick Sayer has served as a director of the Company since 2012.

22. Defendant Savio W. Tung has served as a director of the Company since 2010.

23. Defendants referenced in ¶¶ 13 through 22 are collectively referred to as Individual Defendants and/or the Board.

## FURTHER SUBSTANTIVE ALLEGATIONS

24. On November 13, 2019, Tech Data issued a press release announcing the Proposed Transaction. The Press Release read in relevant part:

> CLEARWATER, Fla.--(BUSINESS WIRE)--Tech Data (Nasdaq: TECD) today announced it has entered into a definitive agreement to be acquired by an affiliate of funds (the "Apollo Funds") managed by affiliates of Apollo Global Management, Inc. (NYSE: APO), a leading global alternative investment manager ("Apollo"). Through the agreement, the affiliate of the Apollo Funds will acquire all of the outstanding shares of Tech Data common stock for $130 per share in a transaction with an enterprise value of approximately $5.4 billion.
>
> The purchase price represents a 24.5 percent premium to the unaffected 30-day volume weighted average closing share price of Tech Data's common stock ended Oct. 15, 2019, the last trading day prior to published market speculation regarding a potential transaction involving the company.
>
> "Over our 45-year history, Tech Data has grown to become one of the largest and most respected technology distributors in the world. This agreement reflects the significant progress we have made in our strategy of delivering

higher value and positions us for continued growth and success," said Rich Hume, chief executive officer, Tech Data. "This investment by funds managed by one of the world's leading global alternative investment managers will afford us additional resources to accelerate our ability to bring to market the technology products and solutions the world needs to connect, grow and advance. The transaction will enable us to build on our success, making Tech Data a growth platform and enabling us to further differentiate and expand our end-to-end solutions and provide our channel partners with unparalleled reach, efficiency and expertise."

Charles E. ("Eddie") Adair, lead independent director of the Tech Data Board of Directors said, "This agreement follows a process of consideration of Apollo's proposal by the Board that included review and discussion of strategic alternatives with the Board's financial and legal advisors. The transaction delivers significant cash value to our shareholders and creates exciting opportunities for our colleagues, channel partners and other key constituents."

"Through this investment, we are committed to expanding Tech Data's position as a trusted partner to the world's leading technology vendors while providing best-in-class customer service," said Matt Nord, Co-lead Partner of Apollo Private Equity. "As a private company with our sponsorship and a strong balance sheet, Tech Data will have significant financial and strategic flexibility to drive growth going forward."

"We have tremendous respect for Tech Data's talented management and colleagues around the globe and commend their success in establishing Tech Data as a leader at the center of the IT ecosystem," said Robert Kalsow-Ramos of Apollo Private Equity. "We are excited to work with the Tech Data team and continuing to invest in the company's people and end-to-end portfolio."

The Tech Data Board of Directors has unanimously approved the transaction and recommends that Tech Data shareholders vote in favor of the transaction. The transaction is not subject to a financing condition and is expected to close in the first half of calendar year 2020, subject to the satisfaction of customary closing conditions including expiration or termination of the applicable waiting period under the Hart-Scott-Rodino Antitrust Improvements Act, foreign regulatory approvals and approval by the holders of a majority of the outstanding Tech Data shares. Tech Data expects to hold a Special Meeting of Shareholders to consider and vote on the transaction agreement as soon as feasible after the mailing of the proxy statement to shareholders.

Consistent with the Board's commitment to maximizing shareholder value, the terms of the agreement provide that Tech Data will be permitted to actively solicit alternative acquisition proposals from third parties during a "go-shop" period from the date of the agreement until Dec. 9, 2019. There is no guarantee that this process will result in a superior proposal.

>Following the close of the transaction, Rich Hume will continue to lead Tech Data as chief executive officer, and the company will continue to be headquartered in Clearwater, Florida. Tech Data will become a privately held company, and Tech Data's common shares will no longer be publicly listed.
>
>Tech Data plans to release its third quarter fiscal year 2020 results before market open on Nov. 26, 2019. In light of the pending transaction announced today, the company will not hold a corresponding conference call.
>
>Bank of America Securities is serving as financial advisor to Tech Data, and Cleary Gottlieb Steen & Hamilton LLP is acting as legal counsel.
>
>Citi is serving as lead financial advisor to Apollo in connection with the transaction. J.P. Morgan and Wells Fargo are also serving as financial advisors to Apollo. Wachtell, Lipton, Rosen & Katz is acting as corporate counsel to Apollo, and Paul, Weiss, Rifkind, Wharton & Garrison LLP is acting as financing counsel to Apollo. Transaction financing is being provided by Citi, J.P. Morgan, Wells Fargo, Barclays and RBC Capital Markets.

**The Proxy Misleads Tech Data Stockholders by Omitting Material Information**

25. On December 12, 2019, the Company filed the materially misleading and incomplete Proxy with the SEC. Designed to convince Tech Data's stockholders to vote in favor of the Proposed Transaction, the Proxy is rendered misleading by the omission of critical information concerning the Company's financial projections, BofA's financial analyses, the financial interest of BofA in Apollo and its affiliates, and the negotiations and communications between Company management and Apollo prior to the signing of the Merger Agreement.

### *The Proxy Fails to Disclose Material Portions of the Financial Projections Relied Upon by the Board and Its Financial Advisor*

26. The summary of the financial analyses conducted by the Company's financial advisor, BofA, states that the advisor "reviewed certain internal financial and operating information with respect to the business, operations and prospects of Tech Data furnished to or discussed with BofA Securities by the management of Tech Data, including certain financial

6

forecasts relating to Tech Data prepared by the management of Tech Data" in preparing its financial analyses.

27. Thus, the cash flow projections that formed the basis for these analyses were management's best estimates of the Company's future results, and did not originate from some other source.

28. However, the Proxy omits the projected line items used to calculate Adjusted EBITDA, the base financial metric representing the Company's future earnings.

29. The Proxy also fails to reconcile all non-GAAP financial metrics to GAAP financial metrics,

30. The above-referenced omitted information relating to the Company's financial projections significantly altered the total mix of information available to Tech Data's stockholders regarding the future value of the Company.

31. Thus, the omission of this projected financial information serves to prevent Company stockholders from evaluating the fairness analysis conducted by BofA, or to perform their own valuation of the Company.

*Material Omissions Concerning the Financial Analyses of BofA*

32. The Proxy describes the financial analyses performed by BofA. However, the description of these analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Tech Data's stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on the fairness opinion of BofA in determining how to cast their vote on the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to Tech Data stockholders.

33. With respect to BofA's *Discounted Cash Flow Analysis*, the Proxy fails to disclose (i) the terminal values for Tech Data; (ii) BofA's basis for applying adjusted EBITDA exit multiples of 5.00x, 6.25x, and 7.50x; (iii) the individual inputs and assumptions underlying the discount rates ranging from 7.90% to 10.10%; and (iv) the Company's net debt.

34. With respect to BofA's *Selected Publicly Traded Companies Analysis*, the Proxy omits individual multiples and financial metrics for each of the observed companies.

35. With respect to BofA's *Selected Precedent Transactions Analysis*, the Proxy omits the individual multiples for each of the observed transactions.

***Material Omissions Concerning BofA's Financial Interest in Apollo***

36. The Proxy misleads Tech Data stockholders with respect to BofA's holdings in Apollo and its affiliated funds.

37. The Proxy discloses that:

> BofA Securities and its affiliates may invest on a principal basis or on behalf of customers or manage funds that invest, make or hold long or short positions, finance positions or trade or otherwise effect transactions in equity, debt or other securities or financial instruments (including derivatives, bank loans or other obligations) of Tech Data, certain of its affiliates, Apollo and certain affiliates and portfolio companies of Apollo.

38. Despite this disclosure that BofA may invest on its own behalf in securities of Apollo and Apollo affiliates or portfolio companies, the Proxy fails to disclose BofA's actual financial interest in Apollo and its affiliates.

39. Because of this omission, Tech Data stockholders are misled regarding BofA's actual interests in the Proposed Transaction, and therefore the objectiveness of its fairness opinion and financial analyses.

***Material Omissions Regarding the Continued Employment of Company Management***

40. The Proxy fails to disclose any negotiations or communications regarding the future employment of the members of Tech Data's management, as well as the details of any employment related discussions and negotiations that occurred between Apollo and Tech Data executive officers, including who participated in all such communications, when they occurred, and their content. The Proxy further fails to disclose whether any of Tech Data's prior proposals or indications of interest addressed the prospect of management retention.

41. The press release specifically states that, "[f]ollowing the close of the transaction, Rich Hume will continue to lead Tech Data as chief executive officer, and the company will continue to be headquartered in Clearwater, Florida." It also states that Apollo has "tremendous respect for Tech Data's talented management and colleagues around the globe and commend their success in establishing Tech Data as a leader at the center of the IT ecosystem . . . . We are excited to work with the Tech Data team and continuing to invest in the company's people and end-to-end portfolio." As a purely financial company, Apollo lacks the strategic expertise necessary to operate the Company without current management. Naturally, the Tech Data leadership team would prefer, and therefore prioritize, a transaction with a buyer who would continue to employ them over any transaction in which they would no longer enjoy a salary.

42. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

43. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

### COUNT I

**Claim for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Tech Data**

63. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

64. The Individual Defendants disseminated the false and misleading Proxy, which contained statements that, in violation of Section 14(a) of the Exchange Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading.  Tech Data is liable as the issuer of these statements.

65. The Proxy was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy.

66. The Individual Defendants were at least negligent in filing the Proxy with these materially false and misleading statements.

67. The omissions and false and misleading statements in the Proxy are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy and in other information reasonably available to stockholders.

68. The Proxy is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

69. By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

70. Because of the false and misleading statements in the Proxy, Plaintiff is threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

71. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

72. The Individual Defendants acted as controlling persons of Tech Data within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Tech Data and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

73. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

74. Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein and exercised the same. The Proxy contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy.

75. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

76. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.  Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.  In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.  Directing the Individual Defendants to disseminate a Proxy that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.  Declaring that Defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as Rule 14a-9 promulgated thereunder;

E.  Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F.  Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: January 8, 2020

Respectfully submitted,

By: /s/ *Adam M. Apton*
Adam M. Apton (AS8383)
**LEVI & KORSINSKY, LLP**
1101 30th Street NW, Suite 115
Washington, DC 20007
Tel: (202) 524-4859
Fax: (212) 333-2121
Email: aapton@zlk.com

*Attorneys for Plaintiff*

**LEVI & KORSINSKY, LLP**
Donald J. Enright (to be admitted *pro hac vice*)
Elizabeth K. Tripodi (to be admitted *pro hac vice*)
1101 30th Street, N.W., Suite 115
Washington, DC 20007
Tel: (202) 524-4290
Fax: (202) 333-2121
Email: denright@zlk.com
         etripodi@zlk.com

*Attorneys for Plaintiff*